FILED
MAY 8 1997
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA

ENTERED
MAY 0 8 1997

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

NANCY CLAUDETTE HOGELAND,       )
                                )
        Plaintiff,               )
                                )
v.                              )   CV NO. 96-HM-1293-NW
                                )
KIRK DORTCH and                 )
TRINTEX CORPORATION,            )
                                )
        Defendants               )

## MEMORANDUM OPINION

The above-entitled civil action is currently before the Court on the Motion for Summary Judgment filed herein by Defendants Kirk Dortch [hereinafter "Dortch"] and Trintex Corporation [hereinafter "Trintex"] on January 21, 1997. After careful review of the submissions in support of and in opposition to this Motion for Summary Judgment, this Court, for the reasons hereinafter stated, finds that the Defendants' Motion for Summary Judgment is due to be granted.

### FACTUAL AND PROCEDURAL BACKGROUND

On April 17, 1996 Plaintiff Nancy Claudette Hogeland [hereinafter "Hogeland"] commenced this civil action by filing a complaint in the Circuit Court of Colbert County, Alabama. Plaintiff's state court complaint alleged the following set of facts. In 1981, Plaintiff was hired by Sterling Tire Company initially as a data entry clerk, though by 1984 she had been promoted to data processing manager. In January of 1994 Sterling Tire Company filed for bankruptcy protection. In April of that same year, Sterling and Defendant Trintex entered into a contract

whereby Defendant Trintex would purchase the assets of the bankrupt Sterling Tire Company.

Following this April 1994 asset purchase agreement, Defendant Trintex became involved in the management of Sterling. Plaintiff continued to work for Sterling as data processing manager but with the understanding that her continued employment after the purchase closing was questionable. In June or July of 1994, Plaintiff met with Defendant Dortch, Trintex's President, who indicated that her position would not be retained after the closing. However, Dortch indicated that Plaintiff and David Ladner, Sterling's Vice President of Finance, would both be offered the position of office manager.

A few days later, Plaintiff met with Dortch and Jimmy Isom, a Sterling owner and vice president. Plaintiff explained to Defendant Dortch that she would not fight a fellow employee for the position and that he should offer it to one of the two of them, but not both. Subsequently, Bill Weeks, a Trintex employee in the home office, told Plaintiff that he and Defendant Dortch had worked out positions for her and the other Sterling employees. He urged Plaintiff to remain at Sterling.

In October of 1995, Plaintiff again met with Defendant Dortch and Mr. Ladner. At this meeting, Plaintiff was questioned about $250,000 worth of lost inventory. Plaintiff was not responsible for inventory and was upset at being questioned about the loss. At a company management dinner that evening, Plaintiff again became upset with Defendant Dortch for his treatment of her at the dinner and at the earlier meeting. Plaintiff left the dinner meeting

2

early and did not go to work at Sterling for the next two weeks.

After those two weeks, Defendant Dortch called Plaintiff and requested a meeting, to which Plaintiff agreed. At this meeting, Dortch attempted to persuade Plaintiff to return to work at Sterling. Defendant Dortch promised Plaintiff that if she returned things would be better and that she would be given an important position with Trintex. Though she had another job offer at the time, Plaintiff returned to work at Sterling, where she worked until March 31, 1995, the scheduled asset closing date.[1] Trintex did not hire Plaintiff for the data processing manager.

Plaintiff's state court complaint further alleged that the promise made to Plaintiff by Dortch that if she returned she would be given an important position was false, that he had no intention of keeping this promise, and that she relied on it to her detriment, thus stating a claim under Alabama state law for promissory fraud against both Defendants. Plaintiff also alleged that Trintex's failure to employ her was based on her sex and/or her age in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* and the Age Discrimination in Employment Act ["ADEA"], 29 U.S.C. § 621 *et seq.*[2] Plaintiff finally alleged that Defendant Dortch's promise was an offer which she accepted, thus forming a contract which was breached, thus stating an Alabama

---

[1] It turned out that the scheduled March 31, 1995 closing was delayed at the last minute and actually took place on May 1, 1995.

[2] Plaintiff specifically alleged that the Title VII and ADEA claims were brought against Defendant Trintex alone, while the state law claims were brought against both Trintex and Dortch.

3

state law claim for breach of contract against both Defendants.

Under date of May 16, 1996 Defendants jointly removed this civil action to this United States District Court. Defendants alleged that this Court had subject matter jurisdiction pursuant to 28 U.S.C. § 1331 [federal question] and 28 U.S.C. § 1332(a) [diversity of citizenship and amount in controversy]. Defendants further alleged that Plaintiff is a citizen of the state of Alabama, that individual Defendant Dortch is a citizen of the state of Georgia, and that corporate Defendant Trintex is a Georgia corporation with its principal place of business in Georgia. Defendants finally alleged that the amount in controversy in this civil action exceeded the sum or value of $50,000.00, exclusive of interest and costs.

After obtaining leave of this Court to do so, Plaintiff filed her First Amended Complaint on August 26, 1996. The Amended Complaint contained the same allegations of fact as summarized above, but added an Alabama state law claim for the tort of outrage against Defendant Dortch and sought to impose liability for Dortch's torts on Defendant Trintex under a theory of respondeat superior. On January 21, 1997, following the completion of discovery, Defendants jointly filed the Motion for Summary Judgment which is currently pending.

Under date of February 20, 1997 Plaintiff moved this Court to dismiss her Alabama state law claims for breach of contract and for outrage. By Order dated February 25, 1997 this Court granted Plaintiff's Motion and dismissed those state law claims only.

4

Therefore, the only claims remaining against Defendants in this summary judgment proceeding are the Title VII/ADEA claims against Defendant Trintex only and the Alabama state law promissory fraud claim against both Trintex and Dortch.

## STANDARD OF REVIEW FOR SUMMARY JUDGMENT

The Court will grant summary judgment when "there is no genuine issue as to any material fact . . . and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In cases where the movant is the defendant, that party must show that the nonmoving party, the plaintiff, lacks evidence to support an essential element of his or her claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Where the movant is the plaintiff, that party must establish the absence of an issue of material fact with regard to *every* element essential to his or claim. *Celotex,* 477 U.S. at 325.

The movant's burden is "discharged by showing -- that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case." *Id.* However, it is not sufficient for the movant merely to point out to the court this absence of evidence. *See id.* at 323. Rather,

> [a] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323 (quoting Fed. R. Civ. P. 56(c)).

Only after the movant meets its initial burden does any

obligation on the party of the nonmovant arise. *See id.; Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 160 (1970). However, once the movant meets this initial burden, the opposing party must demonstrate evidence establishing a material issue of fact. *See Celotex*, 477 U.S. at 325. The nonmoving party must go "beyond the pleadings" and introduce evidence designating "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324.

The court must view all evidence and factual inferences in the light most favorable to the nonmoving party. *See Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1529 (11th Cir. 1987); *Everett v. Napper*, 833 F.2d 1507, 1510 (11th Cir. 1987). However, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)(emphasis in original). An issue is not "genuine" if it is not supported by evidence or is created by evidence that is "merely colorable" or "not significantly probative." *Anderson*, 477 U.S. at 250. Similarly, a fact is not "material" unless it is identified by the controlling substantive law as an essential element of the nonmoving party's case. *See id.* at 248. Therefore, to defeat a motion for summary judgment, the nonmoving party must come forward with specific evidence of every element essential to his or her case as to create a *genuine* issue for trial. *See Celotex*, 477 U.S. at 323; *Rollins*, 833 F.2d at 1528.

6

## DISCUSSION

This Court will first address Plaintiff's federal law claims under Title VII and the ADEA. Before even reaching the merits of these claims, Movants/Defendants contend that Plaintiff did not timely file this civil action. Under both Title VII and the ADEA, a plaintiff must file his civil action within 90 days of **receipt** of the Notice of Right to Sue from the EEOC. See 42 U.S.C. § 2000e-5(f)(1) [Title VII]; 29 U.S.C. § 626(e) [ADEA]. The right to sue letter in this case was issued December 18, 1995. In Plaintiff's First Amended Complaint, Plaintiff claims that she received the letter on March 18, 1996. But Defendants point out that the certified mail return form indicates that the letter was delivered to and signed for by William Hogeland, Plaintiff's husband, on December 21, 1995 following an unsuccessful delivery attempt the day before at Plaintiff's home address. Plaintiff's state court complaint was filed on April 17, 1996, 118 days later. Defendant argues that as a matter of law, Plaintiff's Title VII and ADEA claims are time-barred.

Plaintiff contends that Mr. Hogeland simply did not tell Plaintiff about the delivery of the letter to him. Plaintiff then urges the court to equitably toll the statute of limitations on the basis of her husband's failure to inform her of the delivery of her right to sue letter. Plaintiff claims that she filed suit promptly after actually learning of the delivery of the letter, allegedly March 18, 1996. This lawsuit was filed April 17, 1996, 118 days after Plaintiff's husband signed for the EEOC letter.

7

The Eleventh Circuit has refused to adopt a rule of constructive receipt of right to sue letters. *See Lewis v. Connors Steel Co.*, 673 F.2d 11240, 1242 (11th Cir. 1982). However, in several cases very close though not exactly on point the court has not allowed equitable tolling where a plaintiff's spouse accepts delivery of the right to sue letter but does not immediately inform the plaintiff. In *Bell v. Eagle Motor Lines, Inc.*, 693 F.2d 1086 (11th Cir. 1982), the Eleventh Circuit affirmed the decision of the trial court that the 90-day limitation period began to run when the plaintiff's wife signed for the EEOC notice at the plaintiff's residence despite the plaintiffs' contention that he only learned of the letter eight days after its delivery. Similarly, in *Law v. Hercules, Inc.*, 713 F.2d 691 (11th Cir. 1983), the Eleventh Circuit affirmed the district court's holding that the time for filing suit began to run when the plaintiff's 17-year-old son signed for the EEOC letter and placed it on the kitchen table, where it came to the plaintiff's attention one or two days later.

Plaintiff attempts to distinguish these two cases by noting that her husband never told her about the EEOC letter having arrived. Plaintiff further asserts that there is no reported precedent governing this exact situation making this an issue of first impression. Without benefit of controlling precedent, Plaintiff argues that equity demands that she not be punished for her husband's negligent conduct.

The Eleventh Circuit has repeatedly stated that

> There is no reason why a plaintiff should enjoy a manipulable open-ended time extension which would render

8

> the statutory limitation meaningless. Plaintiff should
> be required to assume some minimum responsibility himself
> for an orderly and expeditious resolution of his dispute.

Law, 713 F.2d at 692 (quoting *Lewis v. Connors Steel Co.*, 673 F.2d 1240 (11th Cir. 1982); *Bell v. Eagle Motor Lines*, 693 F.2d 1086, 1087 (11th Cir. 1982) (also quoting *Lewis*). While it is true that the fact situation in this civil action does not conform precisely to those in the cases cited and discussed hereinabove, their pattern is clear. Where someone of suitable responsibility living in the plaintiff's household accepts the certified right to sue letter from the EEOC, absent compelling circumstances, the Plaintiff will ordinarily be deemed to have notice from that family member. Frankly, this Court finds it difficult to accept that Plaintiff's husband would sign for this extremely important certified letter and then suffer such an incredible memory lapse. Plaintiff offers no explanation in her brief of what her husband actually did with the letter after accepting delivery.

At the pretrial conference in this civil action, counsel of record for Plaintiff indicated that Plaintiff learned that the letter had been sent only after he received a fax copy of the right to sue letter from the EEOC on March 18, 1996. The letter was signed for by Plaintiff's husband on December 21, 1995, meaning that Plaintiff's 90-day period would have expired on March 20, 1996. If counsel of record for Plaintiff received a fax copy of the letter on March 18, 1996, there was certainly sufficient time for counsel of record for Plaintiff to at the very least file a "bare bones" complaint to protect Plaintiff's rights. This complaint could have

9

been amended as of right before a responsive pleading was filed so as to add any missing detail. *See* Fed. R. Civ. P. 15(a). Such an amendment would have related back to the date of the filing of the original complaint. *See* Fed. R. Civ. P. 15(c)(2).

Finally, the Eleventh Circuit's instruction that a plaintiff must not be allowed to enjoy "a manipulable open-ended time extension which would render the statutory limitation meaningless" is critical to this Court's resolution of this issue. In *Law*, the plaintiff learned of the delivery of the EEOC letter one or two days after its actual delivery yet the Eleventh Circuit held that allowing a one or two day equitable tolling of the statutory limitation would foster the kind of manipulation against which the court had cautioned. *Law*, 713 F.2d at 692. If a one or two day tolling would foster such manipulation, what precedent would a tolling of one month set? This Court cannot and will not allow this or any other Plaintiff to game the system in contradiction of the Eleventh Circuit's explicit warning. Accordingly, this Court finds that the Plaintiff's Title VII and ADEA claims are foreclosed by 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 626(e) and that summary judgment is due to be entered in favor of Defendants and against Plaintiff on these claims.

The only claim remaining is Plaintiff's Alabama state law claim against Defendants Dortch and Trintex for promissory fraud. The Alabama Supreme Court has defined promissory fraud as ordinary fraud plus an additional element, writing:

> The essential elements of a fraud claim are: (1) misrepresentation of a material fact (2) made willfully

10

> to deceive or recklessly without knowledge (3) which was
> justifiably relied upon by the plaintiff under the
> circumstances and (4) which caused damage as a proximate
> result. In a fraud claim based on an alleged promise to
> perform an action in the future, the plaintiff must show
> that at the time the promise was made the promisor had no
> intention of carrying out the promise but, rather, had a
> present intent to deceive.

*Udcoff v. Friedman*, 614 So. 2d 436, 438-39 (Ala. 1993)(citations omitted). Additionally, the Court has held that although intent is ordinarily a question of fact for the jury, the plaintiff must do more than show that the defendant failed to keep the alleged promise. Rather, plaintiff must introduce evidence of the defendant's subjective intent. *See National Security Ins. Co. v. Donaldson*, 664 So. 2d 871, 876 (Ala. 1995). Movants/Defendants assert that Plaintiff can produce no evidence from which a jury could infer intent not to hire Plaintiff as a Trintex employee. In fact Defendants claim that to the contrary the fact that after her co-workers urged Sterling management to rehire Plaintiff during her two week absence following the management dinner and that acting on that urging Sterling management persuaded Plaintiff to return, which she in fact did, proves that Trintex intended to keep its promise and hire Plaintiff after the closing.

At this point, the burden is on the Plaintiff to come forward with specific, credible evidence to support this element of her claim. *See Celotex*, 477 U.S. at 325. Plaintiff responds first by arguing that the fact that plaintiff was never hired by Defendant Trintex supports an inference that Trintex never intended to hire her. Controlling Alabama case law clearly states that such an inference is improper to prove intent. *See National Security*, 664

11

So. 2d at 876. Plaintiff also argues, without citing to evidentiary matter on file, that Defendants have denied ever promising Plaintiff a position and that this denial somehow supports an inference of intent to break the promise. In fact, Defendant's Statement of Undisputed Facts filed herein February 10, 1997 indicates that Defendant Trintex, through Defendant Dortch, did in fact promise Plaintiff a good and important position with Trintex. (See pg. 6 of Statement). Thus, this argument is without merit.

Plaintiff next argues that since Trintex currently has no employee with the title of office manager, which position Plaintiff was promised, that this fact supports an inference of intent to deceive. Plaintiff has never alleged that she was promised the office manager's position. Rather, the promise she alleges was broken was Defendant Dortch's promise that if she would return to Sterling she would be given a good and important position with Trintex. The fact that the position of office manager does not exist now at Trintex proves nothing regarding Defendant Dortch's intent and is purely speculative.

Plaintiff additionally argues that the fact that she was never replaced after she left Sterling's employment on March 31, 1995 is evidence of intent on Defendants' parts to deceive her. This argument is undercut by Plaintiff's own Statement of Disputed Facts, filed herein March 14, 1997. In that document, Plaintiff indicates that her duties were assumed by her former assistant, Kelly Speake, after her resignation on March 31, 1995. (See pg. 6-7 of

12

Plaintiff's Statement). Since Plaintiff was replaced and her duties assigned to another employee, this argument is meritless. Even had she not been replaced, this Court must confess that this fact's alleged relevance and probative value escape the Court's understanding.

Plaintiff finally takes the position that Defendants lied to her about giving her a good job after the closing of the asset purchase so as to motivate Plaintiff to return to work at Sterling until the closing date to supervise the conversion from the Sterling data system (an older IBM system) to the Trintex system (which was based on personal computers or PCS). Plaintiff argues that this motive could support an inference of intent to deceive. First, the closing date turned out to be May 1, 1995, after Mr. Speake had assumed Plaintiff's duties and position on March 31, 1995. Thus, Plaintiff was not retained until the closing, but left with a month yet to go. This fact notwithstanding, this alleged motive is merely colorable and speculative and is not specific credible evidence of this element of Plaintiff's claim. *See Celotex*, 477 U.S. at 323. Therefore, Plaintiff has failed to demonstrate that there is a genuine issue of material fact on the issue of Defendants' intent to deceive. Accordingly, summary judgment is due to be granted in favor of Defendants Dortch and Trintex and against Plaintiff on the Alabama state law claim for promissory fraud.

## CONCLUSION

For the foregoing reasons, this court finds that there is no

genuine issue of material fact and that Defendants are entitled to judgment as a matter of law as to all claims asserted against them by Plaintiff in this civil action. Accordingly, this Court must grant Defendants' joint Motion for Summary Judgment, filed herein January 21, 1997. An appropriate order in conformity with this Memorandum Opinion is contemporaneously entered.

DONE this 8th day of May, 1997.

_____
E.B. HALTOM, JR.
SENIOR UNITED STATES DISTRICT JUDGE


FLORENCE, ALABAMA ADDRESS:

U.S. District Court
Northern District of Alabama
U.S. Post Office & Courthouse
210 North Seminary Street
P.O. Box 1076
Florence, AL 35630
Telephone: (205) 760-8415